**FILED**

NOV 09 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL GARCIA, JR., | NO C-07-01105-VRW |
| Petitioner, | ORDER |
| v | |
| R.A. HOREL, Warden, | |
| Respondent. | |

Petitioner Miguel Garcia, Jr, a state prisoner incarcerated at the Pelican Bay State Prison in Crescent City, CA, seeks a writ of habeas corpus under 28 USC § 2254. For the reasons set forth below, a writ is DENIED.

I

On July 12, 2005, after a jury trial in Fresno County superior court, petitioner was convicted of first degree murder and possession of a firearm by a person previously convicted of a violent felony. The jury found true the allegation that petitioner personally discharged a firearm causing great bodily

1  injury or death; in addition, petitioner admitted he had suffered
2  a prior strike, served a prior prison term and committed the
3  charged offenses while on parole.  Petitioner was sentenced to a
4  prison term of 75 years to life plus five years.

5      After the California Court of Appeal affirmed the
6  conviction in its entirety, petitioner filed a petition for
7  review in the California Supreme Court, which denied review.
8  Petitioner's state habeas petition was also denied.  Petitioner
9  subsequently filed a petition for writ of habeas corpus in
10  federal court.

11

12                              II

13      In People v Garcia,[1] No F048408 (Fifth Appellate
14  District, filed Nov 15, 2006), the California Court of Appeal
15  thoroughly detailed the factual background of this case.[2]
16  Opinion at 2-12.  In brief, on the afternoon of October 3, 2003
17  petitioner "fatally shot Simon Herrera inside the garage of a
18  residence owned by Joe Hernandez. [Petitioner] later transported
19  Herrera from the crime scene inside a vehicle registered to
20  Tamara Newman.  Later that day, [petitioner] drove the car to an
21  orchard and set it on fire with Herrera's body inside."  Opinion
22  at 2.

23

24      [1] Because the opinion by the California Court of Appeal was
25  unpublished, this court will refer to the lodged opinion
26  ("Opinion") throughout this order.  The full opinion was lodged
   by respondent as Lodged Document 4.

27      [2] The state court's determination of factual issues is
28  presumed to be correct.  28 USC § 2254(e).

2

1         The evidence against petitioner at trial included

2 testimony and pretrial statements given by Hernandez, Newman and

3 Jose Mara, who were all percipient witnesses.  Opinion at 2-12.

4 Newman testified under a grant of immunity; she had previously

5 been convicted of felony assault and during trial had felony

6 charges pending against her based on an alleged knife assault on

7 Jeffrey Teixerio.  Opinion at 4.  Hernandez, who had been friends

8 with both petitioner and murder victim Herrera, was also facing

9 felony charges at the time of trial.  Opinion at 6.  Jose Mora,

10 who was also a friend of petitioner and Herrera, told Officer

11 Richard Byrd that appellant had confessed to killing Herrera, and

12 had shown him the body in the back of a car.  Opinion at 10.

13 Mora also stated that petitioner had filled a container with gas

14 and that he followed petitioner to the orchard where the car with

15 Herrera's body was burned.  Opinion at 10.  Both Hernandez and

16 Mora testified that they had lied in earlier statements to

17 police.  Opinion at 9-10.

18         The evidence also included the testimony of Robert

19 Zapien, a pre-trial cellmate of petitioner.  Opinion at 11.

20 Zapien testified that petitioner confessed to shooting a man

21 inside a garage in Fresno, in the presence of a girl named

22 Tamara.  Zapien also testified that petitioner said he burned the

23 car to "'get rid of the DNA.'"  Opinion at 11.  Zapien denied he

24 was a prison informant, but admitted on cross-examination that he

25 had previously provided information about a stabbing at San

26 Quentin.  Opinion at 11.  Officer Byrd testified that to his

27 knowledge, no one in law enforcement had offered Zapien any

28

                            3

1  consideration in exchange for his trial testimony; on re-direct,
2  Zapien testified that he decided to come forward because
3  petitioner "callously told him that he shot a child." Opinion at
4  12.

**III**

7            The Antiterrorism and Effective Death Penalty Act of
8  1996 ("AEDPA"), codified under 28 USC section 2254, provides "the
9  exclusive vehicle for a habeas petition by a state prisoner in
10 custody pursuant to a state court judgment, even when the
11 [p]etitioner is not challenging his underlying state court
12 conviction." White v Lambert, 370 F3d 1002, 1009-1010 (9th Cir
13 2004). Under AEDPA, this court may entertain a petition for
14 habeas relief on behalf of a California state inmate "only on the
15 ground that he is in custody in violation of the Constitution or
16 laws or treaties of the United States." 28 USC section 2254(a).

17           The writ may not be granted unless the state court's
18 adjudication of any claim on the merits: "(1) resulted in a
19 decision that was contrary to, or involved an unreasonable
20 application of, clearly established Federal law, as determined by
21 the Supreme Court of the United States; or (2) resulted in a
22 decision that was based on an unreasonable determination of the
23 facts in light of the evidence presented in the State court
24 proceeding." 28 USC § 2254(d). Under this deferential standard,
25 federal habeas relief will not be granted "simply because [this]
26 court concludes in its independent judgment that the relevant
27 state-court decision applied clearly established federal law
28 erroneously or incorrectly. Rather, that application must also

                                   4

1  **be unreasonable." Williams v Taylor, 529 US 362, 411 (2000).**

2      **While circuit law may provide persuasive authority in**
3  **determining whether the state court made an unreasonable**
4  **application of Supreme Court precedent, the only definitive**
5  **source of clearly established federal law under 28 USC section**
6  **2254(d) rests in the holdings (as opposed to the dicta) of the**
7  **Supreme Court as of the time of the state court decision.  Id at**
8  **412; Clark v Murphy, 331 F3d 1062, 1069 (9th Cir 2003).**

9      **When a federal court is presented with a state court**
10 **decision that is unaccompanied by a rationale for its**
11 **conclusions, the court has no basis other than the record "for**
12 **knowing whether the state court correctly identified the**
13 **governing legal principle or was extending the principle into a**
14 **new context." Delgado v Lewis, 223 F3d 976, 982 (9th Cir 2000).**
15 **In such situations, federal courts must conduct an independent**
16 **review of the record to determine whether the state court**
17 **decision is objectively unreasonable.  Id  While federal courts**
18 **"'are not required to defer to a state court's decision when that**
19 **court gives [them] nothing to defer to, [they] must still focus**
20 **primarily on Supreme Court cases in deciding whether the state**
21 **court's resolution of the case constituted an unreasonable**
22 **application of clearly established federal law.'"  Greene v**
23 **Lambert, 288 F3d 1081, 1089 (9th Cir 2002) (quoting Fisher v Roe,**
24 **263 F3d 906, 914 (9th Cir 2001)).  Furthermore, independent**
25 **review of the record is not de novo review of the constitutional**
26 **issue, but rather the only way a federal court can determine**
27 **whether a silent state court decision is objectively**
28 **unreasonable.  Himes v Thompson, 336 F3d 848, 853 (9th Cir 2003).**

1  **However, if the state court did not reach the merits of a claim,**
2  **federal review of the claim is de novo.** Nulph v Cook**, 333 F.3d**
3  **1052, 1057 (9th Cir 2003).**

4          **Even if a petitioner meets the requirements of section**
5  **2254(d), habeas relief is warranted only if the constitutional**
6  **error at issue had a substantial and injurious effect or**
7  **influence in determining the jury's verdict.** Brecht v
8  Abrahamson**, 507 US 619, 638 (1993). Under this standard,**
9  **petitioners "may obtain plenary review of their constitutional**
10 **claims, but they are not entitled to habeas relief based on trial**
11 **error unless they can establish that it resulted in 'actual**
12 **prejudice.'"** Brecht**, 507 US at 637, citing** United States v Lane**,**
13 **474 US 438, 439 (1986).**

14

15                          **IV**

16         **Petitioner seeks federal habeas relief based on three**
17 **claims: (1) the trial court erroneously denied petitioner's**
18 **request to present evidence of third-party culpability; (2) the**
19 **trial court failed to give instructions regarding accomplices**
20 **and; (3) petitioner's trial counsel was constitutionally**
21 **ineffective.[3]**

22

23                          **A**

24         **In his first claim for relief, petitioner argues that**
25 **the trial court erred when it denied his request to present**
26

27 ───────────────
          [3] **A fourth, unexhausted claim was withdrawn by petitioner.**
28

                                  **6**

1  evidence of third-party culpability.  The California Court of
2  Appeal addressed this claim in a lengthy reasoned opinion on
3  direct appeal, which this court will summarize here.  Opinion at
4  12-24.

5          Prior to commencement of trial, petitioner moved for
6  "admission of evidence tending to prove that Hernandez shot
7  Herrera and that Newman aided Hernandez."  Opinion at 12.
8  Petitioner based his motion, *inter alia,* on Hernandez's and
9  Newman's arrests for assault after the charged crime occurred.
10 Opinion at 12-13. The trial court denied petitioner's motion,
11 ruling that the evidence could be used to impeach Hernandez, but
12 was not relevant to show his culpability for the charged crime.
13 Opinion at 14.

14         During a hearing outside of the presence of the jury
15 during trial, the trial court found that evidence offered during
16 trial was not direct or circumstantial evidence that Hernandez
17 was the perpetrator.  Opinion at 17.  Finally, after the verdict,
18 the trial court denied petitioner's motion for a new trial, which
19 petitioner had argued was warranted based on the denial of his
20 third-party culpability evidence and newly discovered evidence of
21 an undated, handwritten note that was delivered to petitioner in
22 jail.  Opinion at 17-18.

23         In analyzing petitioner's claim on appeal, the
24 California Court of Appeal first stated the applicable legal
25 standard for analyzing evidence of third-party culpability.

26             "To be admissible, the third-party evidence
               need not show substantial proof of a probability that
27             the third person committed the act; it need only be
               capable of raising a reasonable doubt of defendant's
28             guilt.  At the same time, we do not require that any

                                    7

1           evidence, however remote, must be admitted to show a
              third party's possible culpability.  Evidence of mere
2           motive or opportunity to commit the crime in another
              person, without more, will not suffice to raise a
3           reasonable doubt about a defendant's guilt: there must
              be direct or circumstantial evidence linking the third
4           person to the actual perpetration of the crime.  We
              emphasized that courts should simply treat third-party
5           culpability evidence like any other evidence: if
              relevant it is admissible unless its probative value is
6           substantially outweighed by the risk of undue delay,
              prejudice, or confusion. [Evid Code § 352].  A trial
7           court's discretionary ruling under Evidence Code
              section 352 will not be disturbed on appeal absent an
8           abuse of discretion."

9  Opinion at 19 (citing People v Lewis, 26 Cal 4th 334, 372-373

10  (2001) (internal citations and quotations omitted)).

11           The Court of Appeal then held that, under the above

12  standard, the trial court had not erred when it denied

13  petitioner's motion.  The state court first addressed the

14  relevance of Hernandez's and Newman's arrests for assault.

15                 Hernandez's subsequent crimes are remote and
              the offenses are not similar to the homicide.
16           Hernandez's offenses occurred 11 months after Herrera's
              death.  This lapse of time is significant.  Also, there
17           is no evidence indicating that Hernandez's subsequent
              crimes are in any way involved in or connected to the
18           2003 shooting.  Reyna has no known connection to the
              homicide.  Ybarra heard the shots on October 3 and saw
19           a woman and a man, who was not Hernandez, dragging
              something into a car.  However, there is no indication
20           in the record that Hernandez's threat and assault on
              Ybarra was related to her status as a potential
21           witness.  Finally, Hernandez's assault on Reyna and his
              threats to Ybarra were not committed in a manner that
22           is similar to the shooting.  Herrera was
              surreptitiously killed inside the garage, away from
23           public view.  The shooting was similar to an execution.
              Herrera was seated in the chair and the three shots
24           were fired into his body from point blank range.  In
              sharp contrast, Hernandez threatened and assaulted
25           Reyes and Ybarra in public or semi-public locations --
              a liquor store, a street and Ybarra's front porch.  He
26           brandished a firearm and behaved in an aggressive and
              uncontrolled manner.
27

                 For all of these reasons, we conclude that
28           exclusion of the facts of Hernandez's subsequent

1    offenses to prove his culpability for Herrera's death
     was neither an abuse of discretion nor an infringement
2    of appellant's constitutional due process or fair trial
     rights.   (*Lewis, supra*, 26 Cal. 4th at pp. 373-74.)
3    The fact that felony charges were pending against
     Hernandez was properly admitted to attack his
4    credibility.

5         * * *

6         At no time below did appellant attempt to
     explain how Newman's 2004 assault charge could be
7    relevant to prove her complicity in the homicide.
     Similarly, no explanation is offered on appeal. * * *
8    Therefore, we summarily dismiss any possible claim that
     the court erred by excluding the facts of Newman's 2004
9    assault charge.

10   Opinion at 20-21.

11        Next, the state court addressed petitioner's objection

12   to the trial court's "exclusion of unspecified evidence that

13   allegedly was relevant to prove Hernandez was a drug dealer in

14   Traver and that Herrera was a business competitor."  Opinion at

15   21.  According to petitioner, such evidence would have been

16   relevant to show a motive for Hernandez to kill Herrera, i e

17   elimination of a threat to control of the local drug business.

18   Opinion at 21.

19        The state court first held that petitioner's argument

20   failed because he did not make the offer of proof required under

21   California law to the trial court.  Opinion at 21-22 (citing

22   People v Brady, 129 Cal App 4th 1314, 1332 (2005)).  Petitioner's

23   counsel did not specify during the pre-trial *in limine* hearing or

24   during trial what evidence or testimony he sought to admit to

25   support his theory that Hernandez was a drug dealer and Herrera

26   was a competitor.  Opinion at 22.  The state court held that

27   "[t]he absence of an adequate offer of proof also precludes a

28

                                9

1 finding of prejudice.  Since appellant did not identify the
2 evidence or testimony available to support his drug competition
3 theory, he necessarily failed to show that he was prejudiced by
4 the allegedly improper exclusion of this unspecified evidence.
5 (*People v. Whitt, supra*, 51 Cal. 3d at pp. 648-649.)"  Opinion at
6 22.

7       Although the state court found that petitioner's
8 failure to make an offer of proof precluded relief on his claim
9 of error, it also addressed his claim on the merits.

10              We have carefully reviewed the record and do
            not find any significant evidence supporting the drug
11          competitor theory, with the exception of a reference in
            the September 2004 police reports to marjuana plants
12          found growing in buckets in the yard of the Terrace
            house.  Yet, even assuming the plants support an
13          inference that Hernandez was involved in an illegal
            drug business, they do not support an inference that he
14          operated in the Traver area or that Herrera was a
            competitor.  The preliminary hearing testimony
15          referenced by appellant in his opening brief does not
            relate to drug sales or drug-related activity.
16          Similarly, the messages left by Hernandez on Newman's
            phone, which are cited by appellant, do not reference
17          drug sales or drug-related activity.  The facts that
            Newman used drugs on October 2, that she drove Herrera
18          to the Terrace house from the Traver area at
            Hernandez's request, and that Herrera was directed to
19          wear a blindfold or to lie down on this drive do not
            support a reasonable inference that Hernandez was a
20          drug dealer or that Herrera was a competitor.  Although
            Newman testified that Hernandez, appellant and Herrera
21          argued prior to the shooting, she did not remember the
            subject of their dispute.  Hernandez's numerous lies to
22          investigating officers and his directives to his wife
            and Newman to lie do not support an inference that
23          Hernandez is a drug dealer because the matters about
            which he told them to lie did not concern drugs or
24          drug-related activities.  There is no evidence
            indicating that Herrera was a drug dealer.  Hernandez
25          testified that Herrera was a drug user, not a dealer.

26 Opinion at 22-23.

27       Finally, the state court addressed certain evidence
28 defense counsel raised during trial and the "newly discovered

evidence" raised in petitioner's post-trial motion for a new trial.

During trial, defense counsel indicated that Teixerio might be available to testify that Hernandez showed him where he buried or disposed of the gun used in the shooting.  Defense counsel stated that he was going to interview Teixerio during the upcoming weekend and would then inform the prosecutor and the court of the substance of this interview.  Although the court tentatively ruled that such evidence would not constitute direct or circumstantial evidence that Hernandez murdered Herrera, it approved this course of action.  The record does not contain any record of further discussions concerning Teixerio's possible testimony and Teixerio was not called as a witness.

Although appellate counsel does not specifically cite the court's tentative ruling as erroneous, in an abundance of caution we note that the issue was not preserved for appeal.  It is settled: "A tentative pretrial evidentiary ruling, made without fully knowing what the trial evidence would show, will not preserve the issue for appeal if the appellant could have, but did not, renew the objection or offer of proof and press for a final ruling in the changed context of the trial evidence itself."  (*People v. Holloway* (2004) 33 Cal. 4th 96, 133.)  Defense counsel did not renew his request to call Teixerio after the court's tentative ruling.  Thus, any challenge to the court's tentative ruling was waived.

* * *

Appellant did not raise any appellate argument specifically premised on the undated note, possibly written by Hernandez, which was given to appellant while both men were incarcerated in the Fresno County jail.  This note was translated into English by defense counsel's paralegal and was proffered as newly discovered evidence supporting the new trial motion.  Having failed to develop an appellate argument supported by citation to the record and proper legal argument, we summarily dismiss any possible claim related to this note.  (*People v. Williams*, *supra*, 16 Cal. 4th at p. 206.)

We briefly mention that the note implies that *Newman* shot Herrera.  The author of the note does not admit any involvement in Herrera's death.  Thus, even assuming [Hernandez] authored this note, it does not support the particular third party culpability theory advanced on appeal.

1 Opinion at 23-24.

2          Here, petitioner has not demonstrated that the state
3 court's reasoned opinion is contrary to, or an unreasonable
4 application of, clearly established United States Supreme Court
5 law.  Petitioner also fails to demonstrate that the state court's
6 opinion relied on an unreasonable determination of the facts.

7          "While the Constitution [] prohibits the exclusion of
8 defense evidence under rules that serve no legitimate purpose or
9 that are disproportionate to the ends that they are asserted to
10 promote, well-established rules of evidence permit trial judges
11 to exclude evidence if its probative value is outweighed by
12 certain other factors such as unfair prejudice, confusion of the
13 issues, or potential to mislead the jury."  Holmes v South
14 Carolina, 547 US 319, 326 (2006).  With regards to rules
15 regulating the admission of evidence proffered by criminal
16 defendants of third-party liability for the charged crime, rules
17 excluding such evidence pass constitutional muster if the
18 proposed evidence is, *inter alia*, speculative or remote, does not
19 tend to sufficiently connect the third party with the crime, or
20 does not tend to prove or disprove a material fact.  Id at 327.

21          In Holmes, the trial court had excluded evidence of
22 third-party culpability because of strong evidence of the
23 defendant's guilt.  Id at 328.  The Supreme Court held that such
24 a rule, which focused on the prosecution's case and not the
25 probative value of the proposed evidence, violated a criminal
26 defendant's constitutional right to present a meaningful defense.
27 Id at 328-330.

28          Petitioner's case is distinguishable.  Neither the

**12**

1 applicable evidentiary rule in California (Opinion at 19, citing
2 People v Lewis, 26 Cal 4th 334, 372-373) nor the state appellate
3 court's analysis focus on the strength of the prosecution's case.
4 Rather, the state court held that the proposed evidence was
5 properly excluded because it was irrelevant, remote, not
6 connected to the charged crimes and/or did not tend to show that
7 someone else was responsible for the murder of Herrera.   Opinion
8 at 18-24.   As such, the exclusion of the evidence comports with
9 Holmes, where the Court stated that exclusion of third-party
10 culpability evidence is constitutional if the proposed evidence
11 is, *inter alia,* speculative or remote, does not tend to
12 sufficiently connect the third party with the crime, or does not
13 tend to prove or disprove a material fact.   547 US at 327.

14        Because petitioner has not shown that the state court's
15 decision was an unreasonable application of clearly established
16 federal law, his claim must fail.   Moreover, petitioner has
17 failed to show that the alleged constitutional error had a
18 substantial and injurious effect or influence in determining the
19 jury's verdict.   Brecht, 507 US at 623.   As the state courts
20 found and as this court's review of the record confirms, the
21 evidence proffered by defendant to show third-party culpability
22 was speculative and irrelevant, and did not tend to show that
23 someone else had murdered Herrera.   Therefore, the state court's
24 exclusion of the evidence was not prejudicial.   Id

25

26                                  **B**

27        In his second claim for relief, petitioner maintains
28 that the trial court erroneously failed to instruct the jury that

                                13

1   witnesses Newman and Hernandez were accomplices to the charged

2   crimes.   The California Court of Appeal addressed this claim in a

3   reasoned opinion on direct appeal:

4           The defense requested accomplice instructions
        * * * which were refused.   In his unsuccessful new
5       trial motion, appellant cited the refusal to give
        accomplice instructions as error.

6

7           Appellant contends sufficient evidence was
        presented at trial from which a reasonable juror could
        conclude Newman and Hernandez were accomplices and
8       therefore the trial court erred in refusing cautionary
        instructions. [Footnote 8 omitted] We agree with
9       appellant that cautionary instructions should have been
        given with respect to Newman because there is evidence
10      from which reasonable jurors could have concluded that
        she aided and abetted the homicide.[4]   Yet, the
11      instructional error is harmless.

12      * * *

13          The absence of instruction on the law of
        accomplices is deemed prejudicial if it is reasonably
14      probable that the defendant would have received a more
        favorable verdict if the appropriate instruction had
15      been given.   (*People v. Heishman* (1988) 45 Cal.3d 147,
        163-164.)   In this instance, it is not reasonably
16      likely that if such instructions had been given, the
        jury would have viewed Newman's testimony differently
17      or returned a more favorable verdict.

18          It was quite clear to the jury that Newman
        was not entitled to the same consideration of the
19      evidence as a "'clean [person], free from infamy.'"
        (*People v. Guinan* (1998) 18 Cal.4th 558, 565.)   During
20      closing arguments the prosecutor acknowledged the
        numerous factors adversely affecting Newman's
21      credibility.   He referenced her grant of immunity from
        prosecution in the matter, her prior felony conviction,
22      her pending felony charge and her obvious drug use and
        addiction as factors potentially damaging to her
23      believability.   The prosecutor even made the following
        important concession: "[I]n this case [if] you just had
24      Tamara Newman, acquit him.   If that's the only witness

25  _____

26      [4] The state court also held that "the record does not
    contain significant evidence, as opposed to speculation or
27  argument, from which a reasonable jury could have concluded that
    Hernandez was an accomplice to the charged offense."   Opinion at
28  26.

1      you [had] was Tamara Newman about what happened [*sic*],
       acquit. * * *" The jury was instructed it could
2      consider grants of immunity, prior felony convictions,
       past criminal conduct and prior inconsistent statements
3      in assessing a witness's believability [citations
       omitted].
4
                 The absence of instruction on the requirement
5      that an accomplice's testimony must be corroborated is
       harmless if there is corroborating evidence in the
6      record.  Corroborating evidence may be slight and "is
       sufficient if it tends to connect the defendant with
7      the crime in such a way as to satisfy the jury that the
       accomplice is telling the truth."  Corroborating
8      evidence may be slight and "is sufficient if it tends
       to connect the defendant with the crime in such a way
9      as to satisfy the jury that the accomplice is telling
       the truth."  (*People v Fauber* (1992) 2 Cal.4th 792,
10     834.)  Numerous witnesses corroborated Newman's
       testimony.
11
            * * *
12
                 Accordingly, we find the instructional error to be
13     nonprejudicial.

14
Opinion at 24-28.
15
                 Petitioner has not shown that the state court's
16
reasoned opinion is contrary to, or an unreasonable application
17
of, clearly established United States Supreme Court law.
18
Petitioner also fails to demonstrate that the state court's
19
opinion relied on an unreasonable determination of the facts.
20
Finally, petitioner cannot show that any alleged error was
21
prejudicial.  Brecht, 507 US at 623.
22
                 Indeed, petitioner has not properly stated a federal
23
constitutional claim.  As the excerpt *supra* makes clear,
24
petitioner is alleging that the trial court violated California
25
state law when it did not instruct on accomplices.  The United
26
States Supreme Court has confirmed that a challenge to a jury
27
instruction solely as an error under state law does not state a
28

1  **claim cognizable in federal habeas corpus proceedings.  Estelle v**
2  **McGuire, 502 US 62, 71-72 (1991).  Rather, to obtain federal**
3  **collateral relief for instructional error, a petitioner must show**
4  **that the ailing instruction or the lack of instruction by itself**
5  **so infected the entire trial that the resulting conviction**
6  **violates due process.  Estelle, 502 US at 72; Cupp v. Naughten,**
7  **414 US 141, 147 (1973); see also Donnelly v DeChristoforo, 416 US**
8  **637, 643 (1974) ("'[I]t must be established not merely that the**
9  **instruction is undesirable, erroneous or even "universally**
10 **condemned," but that it violated some [constitutional right].'").**
11 **The instruction may not be judged in artificial isolation, but**
12 **must be considered in the context of the instructions as a whole**
13 **and the trial record.  See Estelle, 502 US at 72.**

14        **Here, petitioner cannot show that the trial court's**
15 **alleged violation of state law states a federal constitutional**
16 **claim.  To the extent he is alleging that the instructional error**
17 **is a violation of federal due process law, his claim must fail as**
18 **he can cite to no relevant case or statutory law supporting such**
19 **an argument.  As the Ninth Circuit has stated, a petitioner "may**
20 **not, . . . transform a state-law issue into a federal one merely**
21 **by asserting a violation of due process."  Langford v Day, 110**
22 **F3d 1380, 1389 (9th Cir 1996).**

23        **As the state court reasonably confirmed, there was no**
24 **instructional error regarding Hernandez.  Opinion at 26.  And**
25 **while the trial court erred in failing to give accomplice**
26 **instructions regarding Newman, such error was harmless.  Opinion**
27 **at 25.  The jury was instructed that it could use Newman's grant**
28 **of immunity, prior inconsistent statements, prior felony**

1 **convictions and past criminal conduct in assessing her**
2 **credibility.  Opinion at 37.  There was also extensive**
3 **corroboration of her testimony; as such, the absence of the**
4 **proposed instruction that an accomplice's testimony requires**
5 **corroboration would have been redundant, and would not have**
6 **convinced the jury to return a different verdict.  Opinion at 27-**
7 **28.  Therefore, any instructional error does not rise to the**
8 **level of a due process violation and petitioner's claim must be**
9 **denied.**

10
11                                 **C**

12          **In his third claim, petitioner maintains that his trial**
13 **counsel's stipulation to admission of and/or failure to request a**
14 **limiting instruction regarding testimony that petitioner shot a**
15 **child amounted to a violation of the Sixth Amendment.  Petitioner**
16 **also argues that the testimony was improperly admitted.**

17          **In order to prevail on a Sixth Amendment**
18 **ineffectiveness of counsel claim, petitioner must establish two**
19 **things.  First, he must establish that counsel's performance was**
20 **deficient, i e, that it fell below an "objective standard of**
21 **reasonableness" under prevailing professional norms.  Strickland**
22 **v Washington, 466 US 668, 687-88 (1984).  Second, he must**
23 **establish that he was prejudiced by counsel's deficient**
24 **performance, i e, that "there is a reasonable probability that,**
25 **but for counsel's unprofessional errors, the result of the**
26 **proceeding would have been different."  Id at 694.  A reasonable**
27 **probability is a probability sufficient to undermine confidence**
28 **in the outcome.  Id at 694.**

1          **Petitioner has the burden of showing that counsel's**
2    **performance was deficient.** Toomey v Bunnell, **898 F2d 741, 743**
3    **(9th Cir 1990).  Similarly, he must "affirmatively prove**
4    **prejudice."** Strickland, **466 US at 693.  Conclusory allegations**
5    **that counsel was ineffective do not warrant relief.** Jones v
6    Gomez, **66 F3d 199, 205 (9th Cir 1995).**

7          **The California Court of Appeal addressed this claim in**
8    **a reasoned opinion on direct appeal.  First, the state court**
9    **reviewed the factual background.  Witness Zapien, who had met**
10   **petitioner in prison, testified that petitioner had told him "he**
11   **shot a man inside his brother's garage in Fresno."  Opinion at**
12   **11.  Zapien also testified that he approached authorities about**
13   **petitioner's statement because petitioner told Zapien that he**
14   **shot a child and talked about the incident "like he just . . .**
15   **didn't care, you know."  Opinion at 30.  The trial court**
16   **overruled petitioner's counsel's objection to the testimony, and**
17   **also noted that petitioner's counsel had earlier stipulated to**
18   **admission of the evidence on the record.  Opinion at 28-30.**

19         **The California Court of Appeal then addressed**
20   **petitioner's claim on the merits, focusing on the prejudice prong**
21   **of the** Strickland **standard.**

22                    **The prejudice standard has not been**
         **satisfied.  It is not reasonably probable that the jury**
23       **would have returned a more favorable verdict if the**
         **challenged testimony had been excluded.  First, no**
24       **details were elicited about the uncharged shooting and**
         **the challenged statement was not used as propensity or**
25       **bad character evidence [].  The prosecutor's questions**
         **were related solely to the effect that appellant's**
26       **statement had on Zapien, not on the details of the**
         **uncharged shooting.  No evidence was admitted**
27       **indicating that appellant actually shot a child or**
         **corroborating Zapien's claim that appellant told him**
28       **that he had done so.  During closing arguments, the**

                                    **18**

1                     **prosecutor did not argue that appellant actually shot a child or urge the jury to convict appellant on the basis of his bad character. Additionally, the jury was given CALJIC No. 3.20, which directed the jurors to view the testimony of an in-custody informant "with caution and close scrutiny." Finally, Zapien is not the only person to whom appellant admitted shooting Herrera. Detective Byrd testified that Mora said appellant admitted to him that he killed Herrera. Mora said he was afraid appellant might also kill him because appellant killed Herrera, who was his friend. The jury was free to disbelieve Mora's recantation of some of his statement to Detective Byrd. Having considered the entirety of the record, we conclude that it is not reasonably likely that admission of the challenged testimony affected the verdict.**

Opinion at 31-32.

Here, too, petitioner fails to demonstrate prejudice[5], and cannot show that the state court's reasoned opinion is contrary to, or an unreasonable application of, clearly established United States Supreme Court law. Petitioner also fails to demonstrate that the state court's opinion relied on an unreasonable determination of the facts. Petitioner cannot show that there is a reasonable probability that, but for his counsel's alleged failures, the result of his proceeding would have been different. See Strickland, 466 US at 693, 694.

As the state court discussed in detail, the jury was instructed to view Zapien's testimony with caution. The

---

[5] A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as the result of the alleged deficiencies. See Strickland, 466 US at 697; Williams v Calderon, 52 F3d 1465, 1470 & n3 (9th Cir 1995) (approving district court's refusal to consider whether counsel's conduct was deficient after determining that petitioner could not establish prejudice), cert denied, 516 US 1124 (1996).

1  statement in question was admitted solely for its impact on

2  Zapien, not for its truth or as proof of any prior bad act on the

3  part of petitioner.  In addition, according to the trial

4  testimony, Zapien was not the only person to whom petitioner

5  admitted killing Herrera; as a result, especially in light of the

6  significant additional evidence against petitioner, the jury did

7  not have to rely solely upon Zapien's testimony to find

8  petitioner guilty.  Because petitioner cannot demonstrate

9  prejudice, he is not entitled to federal habeas relief on his

10  claim of ineffective assistance of trial counsel.

11       Petitioner also argues that Zapien's testimony was

12  improperly admitted by the trial court.  The California Court of

13  Appeal addressed this claim in a reasoned opinion on direct

14  appeal.

15            Appellant also contends that Zapien's
           testimony concerning appellant's statement that he shot
16        a child constitutes improper bad character or
           propensity evidence and that its admission infringed
17        his federal constitutional due process right.  In a
           related claim he argues defense counsel was ineffective
18        because he did not request a limiting instruction on
           the use of bad character evidence [].  These arguments
19        fail because the challenged testimony was not admitted
           or used to prove appellant's bad character or
20        propensity for violence.

21            The challenged testimony was admitted to
           provide an alternative explanation for Zapien's
22        decision to inform on appellant.  The defense sought to
           discredit Zapien by showing he was a prison snitch
23        hoping for benefits in exchange for his testimony in
           this proceeding.  On cross-examination, the defense
24        elicited testimony that Zapien previously provided
           information to prison officials in respect to a 1999
25        stabbing incident.  During redirect examination, the
           prosecutor elicited the challenged testimony to
26        rehabilitate Zapien by providing an alternative motive
           for his decision to come forward.  The prosecutor did
27        not argue in closing that appellant actually shot a
           child or otherwise use this testimony in an improper
28        manner.  He did not argue that it demonstrated

1

2

3

**appellant's bad character or that he had a propensity for violence.** *Michelson v. United States* **(1948) 334 U.S. 469, which is relied upon by appellant, is distinguishable on this basis.** (*Id.* **at pp. 475-476.)**

4

5

6

7

**It is not reasonably probable that the jurors would misuse Zapien's testimony in the manner suggested by appellant.  Consequently, we believe counsel's failure to request a limiting instruction may have been a reasonable tactical decision. * * *  In any event, we do not believe the absence of a limiting instruction affected the verdict.**

8 **Opinion at 32-33.**

9        **Here, petitioner has not demonstrated that the state**

10 **court's reasoned opinion is contrary to, or an unreasonable**

11 **application of, clearly established United States Supreme Court**

12 **law.  Petitioner also fails to demonstrate that the state court's**

13 **opinion relied on an unreasonable determination of the facts.**

14        **The due process inquiry in federal habeas review is**

15 **whether the admission of evidence was arbitrary or so prejudicial**

16 **that it rendered the trial fundamentally unfair.[6]  See Walters v.**

17 **Maass, 45 F3d 1355, 1357 (9th Cir 1995); Colley, 784 F2d at 990.**

18 **Only if there are no permissible inferences that the jury may**

19 **draw from the evidence can its admission violate due process.**

20 **See Jammal v Van de Kamp, 926 F2d 918, 920 (9th Cir 1991).**

21        **Here, as the state court reasonably decided and as this**

22 **court's review of the record confirms, there was no error in**

23 **admission of the evidence because it was admitted for a**

24 **permissible reason: its impact on Zapien.  It was not admitted to**

25 **demonstrate petitioner's generally violent character or his guilt**

26

27        **[6] Petitioner's ineffective assistance of counsel claim has already been addressed by this court.  Therefore, the remainder of this analysis addresses his evidentiary claim.**

28

1  for the alleged crimes.  Contrary to petitioner's assertion, it
2  was probative as to the question why Zapien would come forward if
3  he was not expecting preferential treatment as the result of his
4  testimony.  Opinion at 31-32.  As such, admission of the
5  testimony did not violate due process.  Compare Michelson, 335 US
6  469, 475-476 (discussing general prohibition against prosecutor's
7  reliance on defendant's evil character to establish guilt).

8         Furthermore, in order to obtain habeas relief on the
9  basis of an evidentiary error, a petitioner must show that the
10 error was one of constitutional dimension and that it was not
11 harmless under Brecht.  Here, for the reasons discussed in detail
12 supra, petitioner cannot show that the trial court's alleged
13 error had "'a substantial and injurious effect' on the verdict.'"
14 Dillard v Roe, 244 F3d 758, 767 n7 (9th Cir 2001) (quoting
15 Brecht, 507 US at 623).  Because petitioner cannot demonstrate
16 prejudice, his claim must be denied.

17
18                              V

19         For the reasons set forth above, the petition for a
20 writ of habeas corpus is DENIED.

21         The clerk shall enter judgment in favor of respondent
22 and close the file.

23
24 IT IS SO ORDERED.
25 DATED: 11/6/2009
26
                            Vaughn R Walker
27                          United States District Chief Judge
28

22